## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

**BRANDI EDWARDS,**
**AND ALL OTHERS SIMILARLY**
**SITUATED**

*Plaintiffs,*

v.

**PHOEBE PUTNEY HEALTH SYSTEM,**
**INC.; and PHOEBE PUTNEY HEALTH**
**SYSTEM SUMMARY OF BENEFITS**
**MEDICAL AND PRESCRIPTION**

*Defendants.*

**Civ. Action No.**     1:15-CV-75

---

## COMPLAINT

## CLASS ACTION
## INTRODUCTORY STATEMENT

1.      This is an action against Phoebe Putney Health System, Inc. ("Health System"); and Phoebe Putney Health System Summary of Benefits Medical and Prescription Plan (the "Plan" or "Health System Plan").   Plaintiffs assert that Health System breached its fiduciary duty and caused the Plan to enter into prohibited transactions through arrangements with a 50% Health System subsidiary, Phoebe Putney Health Partners, Inc. ("Health Partners"). Health System selected its subsidiary Health Partners as the network provider for the Plan knowing that

Health Partners and Health System would bill the Plan and Plan participants at substantially inflated reimbursement rates.

The Plan, which includes a substantial amount of financial contributions from participants, was damaged by this self-dealing since it paid an excessive amount to Health System and Health Partners for medical services. Moreover, participants in the Plan were damaged by paying more in co-insurance and deductibles based on this inflated cost for services. Health System and Health Partners offered other employer group medical plans, insurers and third party administrators, which had far less bargaining power than the Health System Plan, substantially better terms with regard to the cost for medical services rendered at Health System.

Health System, as a fiduciary and Plan administrator, never sought similarly favorable deals for its own Plan (and the Plan's participants and beneficiaries) because its goal was to increase the compensation it received as a provider from the Plan and the Plan's participants and also to help financially sustain its subsidiary Health Partners.

**PARTIES**

2.      Plaintiff Brandi Edwards is an employee of Health System, is a resident of the Albany Division of the Middle District of Georgia, and is currently a participant in the Plan.

2

3.      Defendant Phoebe Putney Health System, Inc. ("Health System") is a Georgia corporation located in Albany, Georgia.  At all relevant times Health System was the Plan's administrator as that term is defined in Section 3(16)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA), 29 U.S.C. § 1002(16)(A).  The Plan Administrator is inherently a fiduciary function.  Health System was also a named fiduciary of the Plan.

4.      The Defendant Plan is a self-insured medical plan and is a welfare plan as defined in Section 3(1) of ERISA, 29 U.S.C. §1002(1).  The Defendant Plan was administered in Albany, Georgia. The Plan provides medical and other welfare benefits to employees and spouses and dependents of employees of Health System, Health Partners and other related entities who are participants and beneficiaries in the Plan.  Upon information and belief there are in excess of 3,000 current participants in the Plan.

## JURISDICTION AND VENUE

5.      Plaintiffs seek relief on behalf of the Plan and for themselves through the private causes of action conferred by ERISA § 409, 29 U.S.C. § 1109, and ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3) and to remedy transactions prohibited by Section 406 of ERISA, 29 U.S.C. §1106. Therefore, this Court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6.     This Court has personal jurisdiction over Defendants under ERISA §
502(e)(2), 29 U.S.C. § 1132(e)(2) because one or more of the Defendants reside in
this District and pursuant to ERISA's nationwide service of process.

7.     Venue of this action is proper pursuant to ERISA § 502(e)(2), 29
U.S.C. §1132(e)(2), because the injury occurred directly to Plaintiffs in this district,
where they live and work; because the breaches of fiduciary duty occurred in this
district; and because the Defendants may be found in this district.

## PLAN STRUCTURE AND PARTICIPANT COSTS

8.     Under the terms of the Plan, in order to participate, Plan participants
are required to make employee contributions to the Plan.  These participant
contributions are Plan assets under the terms of ERISA.

9.     The Plan contains two separate "sub-plans," the HDHP Plan and the
HDHP 2500 Plan. Covered beneficiaries living inside the Phoebe Health Partners
Network are given Phoebe Health System facilities as the network provider.
WelForce Administrators is the third party administrator for both sub-plans.

10.    Health System also paid a portion of the Plan costs. Upon
information and belief employee contributions and employer contributions are
combined in such a manner that Health System contributions in addition to
participant contributions became Plan assets as defined under ERISA.

11.    In addition to making participant contributions in order to obtain

coverage, Plan participants and beneficiaries also were required to pay additional amounts for medical coverage through co-payments, co-insurance and deductibles. For most covered services, plan participants must pay an initial deductible amount. After the deductible is met, participants typically pay a co-insurance amount equal to 15% of the covered charges, until the maximum out-of-pocket amount is met each plan year.

## THE ARRANGEMENT WITH WELFORCE ADMINISTRATORS

12.     Health Partners LLC is a managed care network that provides a "preferred provider" network to self-insured medical plans. Health Partners LLC is owned 50% by Health System. At all relevant times, Health Partners, LLC was the network provider selected for the Plan by Health System.   Health System's selection of Health Partners LLC as a network provider was made pursuant to its fiduciary role as Plan Administrator.

13.     The chart set forth below details the relationship among the Defendants and related entities:



14.     Health Partners Benefit Services, LLC is a wholly owned subsidiary of Health Partners, LLC. At all relevant times Health Partners Benefit Services, LLC was the provider selected by Health System to provide third party administrative services to the Plan. Health System's selection of Health Partners Benefit Services, LLC as a third party administrator for the Plan was made pursuant to Health System's fiduciary role as Plan Administrator.

15.     Health System not only selected Health Partners to provide network services to the Plan but also signed a managed care contract with Health Partners to be a medical provider under the Health Partners network. Health System selected Health Partners as a network provider for the Plan knowing that Health System was

and would continue to be a medical provider in that network and knowing what reimbursement it would receive from the Plan pursuant to its managed care contract with Health Partners. Health System also knew that it would be, far and away, the largest provider of medical services to participants and beneficiaries under the Plan.

16.     As a medical provider in the Health Partners network, when a Plan participant or beneficiary received medical services at Health System, the Plan would reimburse Health System for those services under the terms of Health Partners' managed care contract with Health System.

17.     Upon information and belief the amount paid by the Plan for medical services rendered at Health System through the Health Partners network far exceeded what would have been paid if Health System had selected another managed care network such as Blue Cross Blue Shield of Georgia or United HealthCare (collectively "alternate networks").

18.     Upon information and belief there was no difference in quality between the alternate networks that would justify selection of Health Partners given this cost disparity. Upon information and belief the combined in-patient/outpatient discount for services at Health System under alternate networks often exceeded the discount under the Health Partners network by more than 20%. Put another way, if the average alternate network discount was 40% and the average Health Partners discount was 20% and the amount charged to the Plan was $100 then Health

System's reimbursement would be $60 under the alternate network but Health System would receive $80 under the Health Partners network. Thus, for the same service Health System would receive, on average, a 33.3% greater reimbursement under the Health Partners network as compared to the alternate network.

19.     Upon information and belief the managed care contract with Health Partners was far more profitable for Health System than its contract with the alternate networks.

20.     Upon information and belief one of the primary reasons that Health Partners was chosen as a network provider for the Plan was that Health System realized it would receive far greater reimbursements as a provider under the Plan than it would if an alternate network was chosen.

21.     Upon information and belief one of the primary reasons that Health System chose its 50% subsidiary Health Partners as the network provider for the Plan was a concern  that if it selected an alternate network it would put Health System at a significant marketplace disadvantage for future negotiations of its own managed care contracts.  In other words, the selection was made not on the basis of quality or cost from a fiduciary standpoint but rather was based on Health System's own economic interests.

22.     Upon information and belief one of Health System's motivations in selecting the Health Partners was to improve its negotiating position relative to all

managed care companies and to support networks that it believed would pay the hospital more.

23.     Upon information and belief one of the reasons that Health Partners was chosen was to improve the financial health of Health Partners as a 50% subsidiary of Health System.

24.     Upon information and belief the amount that Health System received from the Plan as a medical provider under the Health Partners network was not reasonable compensation when compared to the amount that Health System was being reimbursed for identical services under other alternate networks.

25.     The selection of Health Partners as a network provider not only meant that the Plan paid more for services than it would have if an alternate network had been selected but also meant that Plan participants and beneficiaries paid more for co-insurance and deductibles than they would have had to pay if an alternate network had been selected. Co-insurance in the Plan could be up to 30% for services at Health System. For example, assume a $100 service, 30% co-insurance, and a Health Partners discount of 20% and an alternate network discount of 40%. In this example the Plan participant would have paid $24 in co-insurance under the Health Partners network but only $18 in co-insurance under the alternate network. Thus the participant would be paying 33 1/3% more for co-insurance.

26.     In addition, Health System selected its 50% subsidiary Health Partners

as a third party administrator for the Plan. Plan assets, in the form of participant contributions and segregated employer contributions, were used to pay this third party administrator.

27.     Health systems was received no waiver of its fiduciary obligations as alleged herein from the United States Department of Labor.

## HEALTH SYSTEM'S TREATMENT OF IT'S OWN PLAN PARTICIPANTS AS COMPARED WITH PARTICIPANTS IN OTHER PLANS

28.     Not only did Health System, in its fiduciary capacity, fail to pick the most prudent and cost effective network for the Plan but, upon information and belief it offered other Plans who used the Health Partners network discounts for services at Health System greater than the discounts it offered to its own Plan and the participants and beneficiaries in that Plan. Upon information and belief, some of these other plans had fewer participants than were in the Health System Plan and therefore had less "bargaining power" than Health System had with respect to its own Plan.

29.     The reason that Health System did not offer its own Plan and Plan participants greater discounts for services at Health System was that the Plan was a "captive Plan".   The more Health System discounted its services for its own employees' health care, the less it stood to make as a provider with respect to payments from the Plan (including participant contributions in the Plan) and from

participants and beneficiaries in the way of co-insurance and deductibles. There were no financial incentives to further discount rates because there was no fear that the Plan would switch to another network.

30.     On the other hand, if another employer plan decided to switch from Health Partners to another network where Health System had granted greater discounts, there were powerful incentives for Health System to discount its services further in order to convince that employer to stay with Health Partners. First, to the extent that Health System agreed to increase discounts for that employer/plan but did not increase those discounts to a level provided under the competing alternate network contract it still came out ahead financially. Second, keeping the employer with Health Partners meant that Health System's 50% subsidiary would still receive income for its managed care and/or administrative services. That income ultimately flowed, at least in part, to Health System.

## CLASS ACTION ALLEGATIONS

31.     Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2), and of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all individuals who are or were participants or beneficiaries in the Plan during the period May 2009 to the present ("Class Period").

32.     This action is properly maintainable as a class action because the

members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown by Plaintiffs at this time, Plaintiffs are informed and believe that there are over 7,000 participants, based upon information derived from Form 5500 and IRS Form 990 filings. This figure does not include former participants or current and former beneficiaries who would also be in the Class.

33.     Plaintiffs' claims are typical of those of the Class because Plaintiffs, the members of the Class, and the Plan suffered similar harm and damages as a result of Defendants' prohibited transactions and breaches of fiduciary duty as described herein. The Defendants owed the same fiduciary and other ERISA-based obligations to the Plan, each Plan participant and beneficiary, and each member of the Class. Absent a class action, the Plan and/or members of the Class may not receive restitution or other appropriate relief, will continue to suffer losses, and these violations of law will proceed without remedy.

34.     Plaintiffs are representative parties who will fairly and adequately protect the interests of the other members of the Class and have retained counsel competent and experienced in class action and/or ERISA litigation. Plaintiffs have no interests antagonistic to, or in conflict with, the Class they seek to represent.

35.     A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein. Prosecution of separate actions

by members of the Class would create a risk of inconsistent adjudications with respect to individual members of the Class, which would then establish incompatible standards of conduct for Defendants. As the damages suffered by the individual Class members, direct or indirect through their participation in the Plan may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members individually to redress the wrongs done to them and/or the Plan. The likelihood of individual Class members prosecuting separate claims is remote. Furthermore, Defendants' conduct affected and affects all Class members in a similar manner making declaratory and injunctive relief to the Class as a whole appropriate.

36.     Issues of fact or law that are common to all Class Members include, but are not limited to, whether:

a.     Health System acted in a fiduciary capacity when it selected Health Partners as a provider to the Plan;

b.     The selection of Health Partners was a fiduciary breach under ERISA;

c.     Entry into the preferred provider agreement with Health Partners was a prohibited transaction under ERISA;

d.     Payments by the Plan to Health Partners were prohibited transactions;

e.      Receipt by Health System of payments from the Plan for medical services rendered to Plan participants and beneficiaries were prohibited transactions and a breach of fiduciary duty; and

f.      Health System's receipt of co-payments and deductibles from Plan participants were prohibited transactions and breaches of fiduciary duty.

37.     Plaintiffs anticipate no unusual difficulties in the management of this action as a class action.

## COUNT I
### (Prohibited Transactions Under Section 406(b) of ERISA)

38.     Plaintiffs incorporate the allegations contained in the preceding paragraphs of the Complaint.

39.     Section 406(b) of ERISA, 29 U.S.C. §1106(b) establishes three categories of "self- dealing" prohibited transactions. This section of ERISA prohibits a Plan fiduciary from (i) dealing the assets of the plan in his or her own interest or account, (ii) acting on behalf of or representing a party whose interests are adverse to the plan in any transaction with the plan, and (iii) receiving any consideration for his or her own personal account in connection with a transaction involving the assets of the plan.

40.     Department of Labor Regulation 29 CFR §2550.408b-2(e) states that a violation of §406(b) will occur if a fiduciary uses its control over a plan to cause a plan to pay an additional fee to the fiduciary (or to a person in which such fiduciary

has an interest which may affect the exercise of such fiduciary's best judgment as a fiduciary) to provide a service to the plan. The same regulation provides that an example of a person in which a fiduciary has an interest which may affect the exercise of such fiduciary's best judgment is a person who is a party in interest to the plan as described in Section 3(14)(E), (F), (G), (H), or (I) of ERISA, 29 U.S.C. §1002(14)(E),(F),(G),(H) or (I).    Included in this list under §3(14)(G) is a corporation of which 50% or more is owned by a fiduciary with respect to the plan.

41.    Health System is the Plan Administrator which is inherently a fiduciary function. Health System controlled all aspects of management of the Plan and disposition of its assets as well as had discretionary responsibility with respect to the Plan. Health System is therefore a fiduciary pursuant to Section 3(21) of ERISA, 29 U.S.C. §1002(21).

42.    Health Partners is a 50% subsidiary of Health System and is therefore a party in interest with respect to the Plan pursuant to Section 3(14)(G) of ERISA, 29 U.S.C. §1002(14)(G).

43.    Selection of service providers for the Plan including selection of a provider network and a third party administrator are fiduciary functions.

44.    Health System caused the Plan to enter into prohibited transactions under ERISA §406(b) when it: (a) entered into an agreement with Health Partners, a party in interest, to provide network and administrative services (b) paid Health

Partners for administrative services using Plan assets and (c) paid itself for medical services rendered to Plan participants and beneficiaries with Plan assets. Therefore every payment of Plan assets to Health System or Health Partners was a prohibited transaction in violation of ERISA §406(b).

45.    Section 406(b)(3) of ERISA, 29 U.S.C. §1106(b)(3) prohibits Health System from receiving "any consideration" from any party dealing with the Plan in connection with a transaction involving the assets of the Plan. When a Plan participant has a procedure at Health System for which co-insurance or a co-payment is applicable there are two payments connected with this transaction. First, there is the Plan's payment which involves Plan assets. Second, there is the Plan participant's payment of the co-insurance or copayment amount. Co-insurance and co-payments therefore represent payments received by Health System in connection with a transaction involving Plan assets and is therefore a prohibited transaction under §406(b)(3). Similarly, amounts received by Health System from Plan participants for deductibles would also be a prohibited transaction. Thus every payment received by Health System as co-payments, co-insurance or deductibles was a prohibited transaction in violation of ERISA §406(b).

46.    At all relevant times and actions alleged herein, Health System was the fiduciary of the Plan.

### COUNT II
### (Prohibited Transactions Under Section 406(a) of ERISA)

47.   Plaintiffs incorporate the allegations contained in the preceding paragraphs of the Complaint.

48.   Section 406(a) of ERISA, 29 U.S.C. §1106(a), prohibits furnishing of goods, services, or facilities between the Plan and a party in interest as well as the transfer to, or use by or for the benefit of a party in interest, of any assets of the Plan.

49.   Section 408 of ERISA, 29 U.S.C. §1108 provides certain exceptions to the prohibited transactions set forth in §406(a) but not those of §406(b). Among those exceptions is §408(b)(2) which provides an exemption for making reasonable arrangements with a party in interest for "services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor."

50.   As a fiduciary of the Plan Health System was also a party in interest to the Plan pursuant to §3(14)(A), 29 U.S.C. §1002(14)(A).

51.   Compensation received by Health System from the Plan for performing medical services for Plan participants was excessive and unreasonable in comparison with that the Plan would have paid if an alternate network had been chosen. The payment of this compensation was therefore a prohibited transaction under §406(a) of ERISA and is not exempted under the provisions of ERISA §408(b)(2).

52.   At all relevant times and actions alleged herein, Health System was

the fiduciary of the Plan.

## COUNT III
### (Breach of Fiduciary Duty Under Section 404 of ERISA)

53.     Plaintiffs reincorporate the preceding paragraphs of the complaint as if fully stated herein.

54.     ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A) obligates a fiduciary to discharge his or her duties "solely in the interest" of a plan's participants and beneficiaries and for the "exclusive purpose" of providing plan benefits and defraying reasonable expenses of the Plan.

55.     Section 404(a)(1)(B) of ERISA, 29 U.S.C. §1104(a)(1)(B), sets forth the "prudent expert" standard of care.  An ERISA fiduciary must act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

56.     These ERISA fiduciary duties have been described repeatedly by the Courts as "the highest known to the law."

57.     The selection of service providers is a fiduciary function and Health System acted in a fiduciary capacity when it selected Health Partners as a network provider and to provide administrative services.

58.     By its actions alleged in Paragraphs 15 – 31, Health System breached its fiduciary duty to act prudently and in the sole interest of participants and

beneficiaries when it selected Health Partners, its 50% subsidiary, as a network provider and to provide administrative services.

59.     Health System breached its fiduciary duty to act prudently and in the sole interest of participants and beneficiaries when, knowing that it sought to be a medical provider for the Plan, it failed to appoint an independent fiduciary to determine whether it should be a provider to the Plan and, if so, how it should be compensated.

60.     Health System breached its fiduciary duty to act prudently and in the sole interest of participants and beneficiaries when it chose to pay itself from Plan assets at significantly inflated and unreasonable rates for medical services rendered to participants and beneficiaries at Health System.

61.     Health System was unjustly enriched and profited from its fiduciary breaches to the damage of the Plan and the Plan's participants and beneficiaries not only in receiving excessive and unreasonable reimbursement from the Plan but also in receiving excessive and unreasonable reimbursement from the Plan's participants and beneficiaries in the form of co-insurance, co-payments, and deductibles.

62.     In the alternative, if the selection of Health Partners and medical providers was a settlor function rather than a fiduciary function, then Health System, in its fiduciary role, still had the duty to ignore any settlor command that it spend Plan assets imprudently or act inconsistent with any other provision of

ERISA.  A plan fiduciary is obligated to ignore any settlor directive that mandates the fiduciary act imprudently.  Health System therefore breached its fiduciary duty by following any settlor mandate that it pay Health Partners with Plan assets or pay itself from the Plan at inflated and unreasonable reimbursement rates.

63.     At all relevant times and actions alleged herein, Health System was the fiduciary of the Plan.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1.     Determining that this is a proper class action to be certified under Rule 23 and appointing Plaintiffs class representatives on behalf of the Class;

2.     Declaring that Health System has violated the duties, responsibilities, and obligations imposed upon them as a fiduciary under ERISA;

3.     Unwinding all prohibited transactions as alleged in the Complaint which would include return to the Plan of all payments of Plan assets made to Health System or Health Partners as well as return to participants and beneficiaries all co-insurance, co-payments and deductibles paid to Health System;

4.     Compelling Health System to make good to the Plan all losses to the Plan resulting from Health System breaches of their fiduciary duties;

5.     Awarding actual damages in the amount of any losses the Plan suffered and restore the Plan to the position it would have been in but for the breaches of fiduciary duty;

6.     Appointing an independent fiduciary to oversee all future selection of the Plan's network provider and third party administrator;

7.     Enjoining Health System from any further violations of their ERISA fiduciary obligations;

8.      Require Defendants to render an accounting for any amount paid by the Plan or a Plan participant or beneficiary to Health System or Health Partners;

9.      Surcharge against Defendants and in favor of the Plan and Plan participants and beneficiaries all amounts involved in transactions which such accounting reveals were or are improper, imprudent, unreasonable or excessive;

10.     Awarding extraordinary, equitable, and/or injunctive relief as permitted by law, equity, and the federal statutory provisions set forth herein, pursuant to Fed. R. Civ. P. 64 and 65;

11.     Awarding the Plan and/or Plaintiffs and members of the Class, restitution, disgorgement, and/or other remedial relief including disgorgement of all profits made from co-insurance, co-payments and deductibles;

12.     Awarding the Plan and/or Plaintiffs and members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert witness fees, and other costs;

13.     Awarding the Class Representatives appropriate compensation for their service as Class Representatives; and

14.     Awarding such other relief as this Court may deem just and proper.


Dated: April 28th, 2015

                              /s/Del Percilla, Jr.
                              DEL PERCILLA, JR.
                              Georgia Bar No. 571950
                              1801 Gillionville Rd.
                              Albany, GA 31707-3736
                              Office:     (229) 432-5883
                              Fax: (229) 436-6302
                              delp@percillalaw.com


                              /s/Robert M. Beauchamp
                              ROBERT M. BEAUCHAMP
                              Georgia bar No. 045660

Robert M. Beauchamp
Robert M. Beauchamp Attorney at Law, LLC
1713 Dawson Road
Albany, GA 31707
Office:      (229) 435-3000
Fax: (229) 317-1890
Cell: (229) 894-5379
E-mail:  bobbeauchamplaw@gmail.com


/s/Norris A. Adams, II[1]
_____
NORRIS A. ADAMS, II
N.C. Bar No. 32552
ESSEX RICHARDS, P.A.
1701 South Blvd.
Charlotte, NC 28203-4727
Phone: (704) 377-4300
Fax: (704) 372-1357
E-mail: NAdams@essexrichards.com


/s/Edward G. Connette[2]
_____
EDWARD G. CONNETTE
N.C. Bar No. 9172
ESSEX RICHARDS, P.A.
1701 South Blvd.
Charlotte, NC 28203-4727
Phone: (704) 377-4300
Fax: (704) 372-1357
E-mail: Woody@essexrichards.com


*Attorneys for Plaintiffs and the Class*

---

[1] Subject to admission *pro hac vice*
[2] Subject to admission *pro hac vice.*