**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**
**1:15-CV-75**

---

BRANDI EDWARDS,
AND ALL OTHER SIMILARLY
SITUATED,

      *Plaintiff*,

  vs.

PHOEBE PUTNEY HEALTH SYSTEM,
INC.; and PHOEBE PUTNEY HEALTH
SYSTEM SUMMARY OF BENEFITS
MEDICAL AND PRESCRIPTION,

      *Defendants*.

---

## ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Before the Court are Plaintiff Brandi Edward's Motion for Final Approval of Class Action Settlement on behalf of herself and similarly situated participants and beneficiaries of the Phoebe Putney Health System Summary of Benefits Medical and Prescription Plant, Plaintiff's Unopposed Motion for Final Approval of Award of Attorneys' Fees and Expenses, and Plaintiff's Unopposed Motion for Final Approval of Named Plaintiff's Case Contribution Award. (Docs. 23, 25, 27). On August 11, 2016, the Court conducted a hearing to determine the fairness of the parties' Stipulation of Settlement ("Stipulation"), as amended on July 13, 2016 (the "Amended Stipulation"), the validity of any objections raised with respect to the Amended Stipulation, and whether the Amended Stipulation should be given final approval. For the reasons that follow, Plaintiff's Motion for Final Approval of Class Action Settlement, (Doc. 23), Plaintiff's Unopposed Motion for Final Approval of Award of Attorneys' Fees and Expenses,

(Doc. 25), and Plaintiff's Unopposed Motion for Final Approval of Named Plaintiff's Case Contribution Award, (Doc. 27), are **GRANTED**.

## I.     BACKGROUND

### A.  Nature of the Lawsuit

Plaintiff Brandi Edwards, a resident of Albany, Georgia and a participant in the Phoebe Putney Health System Summary of Benefits Medical and Prescription Plan (the "Plan"), filed this lawsuit against Defendants Phoebe Putney Health System ("PPHS") and the Plan, a self-insured medical plan for the employees, spouses, and dependents of PPHS employees ("the Parties") as a class action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.* ("the Action").

Plaintiff alleged that PPHS selected Phoebe Putney Health Partners ("Health Partners"), a 50% subsidiary of PPHS, as the network provider for the Plan.  Plaintiff asserted that the amount paid by the Plan for medical services rendered at Phoebe Putney Memorial Hospital ("PPMH") through the Health Partners network "far exceeded what would have been paid if [PPHS] had selected another managed care network such as Blue Cross Blue Shield  ('BCBS') of Georgia or United HealthCare (collectively 'alternative networks')." Plaintiff contended that "there was no difference in quality between the alternate networks that would justify selection of Health Partners given this cost disparity" and that Health Partners receives, for the same service, "on average, a 33.3% greater reimbursement under the Health Partners network as compared to the alternate network." Plaintiff asserted that "the managed care contract with Health Partners was far more profitable for [PPHS] than its contract with the alternate networks." Plaintiff alleged that "one of [PPHS's] motivations in selecting the Health Partners was to improve its negotiating position relative to all managed care companies and to support networks that it believed would

pay the hospital more." Plaintiff further alleged that "[t]he selection of Health Partners as a network provider not only meant that the Plan paid more for services than it would have if an alternate network had been selected but also meant that Plan participants and beneficiaries paid more for co-insurance and deductibles than they would have had to pay if an alternate network had been selected."

Plaintiff also contended that PPHS "caused the Plan to enter into prohibited transactions under ERISA § 406(b) when it: (a) entered into an agreement with Health Partners, a party in interest, to provide network and administrative services, (b) paid Health Partners for administrative services using Plan assets, and (c) paid itself for medical services rendered to Plan participants and beneficiaries with Plan assets." Plaintiff also alleged that "[c]ompensation received by [PPMH] from the Plan for performing medical services for Plan participants was excessive and unreasonable in comparison with what the Plan would have paid if an alternate network had been chosen" and that the payment of this compensation is "a prohibited transaction under §406(a) of ERISA and is not exempted under the provisions of ERISA § 408(b)(2)." Finally, Plaintiff alleged that Health System breached its fiduciary duty under ERISA § 404 by selecting Health Partners to provide services for the Plan.

Defendants vigorously denied each and every allegation of wrongdoing and contended that they have no liability regarding any of the claims asserted by Plaintiff and the Class. Defendants specifically denied the allegations that they breached any fiduciary duties owed to the Plan and the Plan's participants, or violated any other provisions of ERISA or any other state or federal law.

In her Complaint, Plaintiff asserted claims for relief for prohibited transactions under ERISA § 406(b), prohibited transactions under ERISA § 406(a), and breach of fiduciary duty

under ERISA § 404. Plaintiff also sought the certification of a class consisting of all individuals who are or were participants in the Plan, and their beneficiaries, during the period May 1, 2009 to December 31, 2015. The Class proposed by Plaintiff contained nearly 6,000 individuals. Defendants moved to dismiss the Complaint on the basis that Plaintiff failed to exhaust her administrative remedies. The Parties agreed to stay the Action, exchange documents, and mediate the dispute.

### B. Class Settlement

On November 11, 2015, the Parties attended a full-day mediation in Atlanta, GA. At the conclusion of the mediation, the Parties agreed to all of settle the claims being asserted in the Action and the terms of that agreement are memorialized in the Stipulation (ECF Doc. No. 14-1). The Parties then asked the Court to certify a class ("the Class") for settlement purposes of all individuals who are or were participants in the Plan, and their beneficiaries, during the period May 1, 2009 to December 31, 2015. (ECF Doc. Nos. 14, 15).

On April 25, 2016, the Court granted preliminary approval of the proposed class action settlement (ECF Doc. No. 19) set forth in the Stipulation (ECF Doc. No. 14-1) between Plaintiff, on behalf of herself and all members of the Class, and Defendants. On June 9, 2016, Defendants caused the Class Notices to be mailed to the Class. (ECF Doc. No. 22.)

Pursuant to the Preliminary Approval Order, any objections were required to be filed by July 21, 2016. (Order, at p. 6.) On or about June 20, 2016, the Parties received a timely objection (the "Objection") to the settlement from settlement class member Kimberly Cohen ("Ms. Cohen"). Ms. Cohen objected to the fairness of the settlement based on the fact that she is a *former participant* who no longer lives in the Albany, Georgia area and, therefore, the proposed relief in the form of a $100 credit that could only be used at the Phoebe Putney

Employee Health Clinic in Albany, Georgia was "unacceptable." (ECF Doc. No. 20.) The Parties, through their respective counsel, thoroughly discussed the Objection raised by Ms. Cohen and agreed to amend the Stipulation to address the concerns raised by Ms. Cohen. The Parties responded to Ms. Cohen by filing the Amended Stipulation with the Court and serving Ms. Cohen with a courtesy copy of this response. (ECF Doc. No. 31.)

An independent fiduciary, Reliance Trust Company ("Reliance") was retained to review and evaluate the proposed settlement on behalf of the Plan. (ECF Doc. No. 30.) Reliance reviewed the Stipulation, the Amended Stipulation, the pleadings, documents exchanged between the Parties, the Parties' respective mediation statements, and other selected materials. Reliance also interviewed counsel for both Parties. Reliance determined that: (1) the Action involves a genuine controversy concerning the Plan; (2) the Settlement is reasonable in light of the Plaintiffs' likelihood of full recovery, the risks and costs of litigation, and the value of the claims foregone; (3) the terms and conditions of the Settlement are no less favorable to the Plan than comparable arms-length transactions; (4) the Settlement is not part of an agreement, arrangement or understanding designed to benefit a party in interest; (5) the Settlement is not a transaction described in PTE 76-1; (6) all terms of the Settlement are specifically described in a written settlement agreement; and (7) the Plan is not receiving non-cash compensation as part of the Settlement. As such, on July 18, 2016, Reliance approved the Settlement in its capacity as a fiduciary of the Plan and for and on behalf of the Plan, and authorized the Settlement in accordance with PTE 2003-39. (ECF Doc. No. 30.)

On August 11, 2016, the Court held a duly noticed final hearing on the fairness of the proposed settlement of this action. (ECF Doc. No. 32.) Counsel for the Class Members and Defendants were present, and objectors had the opportunity to appear and be heard.

## II.    FINDINGS

1. The Court finds that it has jurisdiction over the subject matter of this Action and over all Parties to this Action, including all Members of the Settlement Class.

2. For purposes of this Order Granting Final Approval of Class Action Settlement, the Court adopts and incorporates herein by reference the Parties' Stipulation and exhibits (ECF Doc. No. 14-1), as amended (ECF Doc. No. 23-2); and the Court's Order granting preliminary approval of the Stipulation (ECF Doc. No. 19).

3. On April 25, 2016, the Court entered an Order preliminarily approving settlement. (ECF Doc. No. 19, at 4).  The Court provisionally certified the Class for settlement purposes as a non-opt-out class pursuant to Fed. R. Civ. P. 23(b)(1) (ECF Doc. No. 19, at 3), appointed Norris A. Adams, II, Edward G. Connette, Del Percilla, Jr., and Robert M. Beauchamp as Class Counsel (ECF Doc. No. 19, at 3), approved a procedure for giving notice to the Class (ECF Doc. No. 19, at 5-6), and set a final fairness hearing for August 11, 2016 (ECF Doc. No. 19, at 4). The Court made preliminary findings that the Settlement was fair, reasonable, and adequate, and that it satisfied Rule 23 of the Federal Rules of Civil Procedure. (ECF Doc. No. 19, at 4).

4. The Class preliminarily certified by the Court consisted of all individuals who are or were participants in the Plan, and their beneficiaries, during the period May 1, 2009 to December 31, 2015. (ECF Doc. No. 19, at 3).   The Court preliminarily determined that this Action may proceed as a non-opt out class action under Fed. R. Civ. P. 23(a) and 23(b)(1).

5. The Court directed that members of the Class would be notified of the Stipulation via U.S. Mail to the last known address of each Class Member who can be identified by

reasonable effort to be disseminated no later than 60 days before the Fairness Hearing.

6. The Settlement Administrator sent the Notice to the individual Class Members' last known addresses via U.S. mail in accordance with the Court's directive. Out of 5,968 total Class Members, 297 Class Notices were returned as undeliverable. Of the 297 Class Notices that were returned as undeliverable, the Settlement Administrator was able to locate new addresses for 78 Class Members and resent Class Notices to those addresses. As such, Class Notices were delivered to approximately 5,749 out of 5,968 Class Members, which equates to a successful service rate of approximately 96.3%. (*See* Affidavit of Jose C. Fraga Regarding Mailing of the Class Notice, ECF No. 22-1.)

7. The Court previously found that these notice procedures were reasonably calculated to apprise Class Members of the pendency of the action and afford them an opportunity to present their claims, requests for exclusion, or objections. (ECF Doc. No. 19, at 5-6). Upon consideration of the circumstances of this case, the Court hereby reaffirms that finding and finds the notice given in this case is reasonable and adequate.

8. The Court finds that notice was directed to all Class Members as set out above. *See* Fed. R. Civ. P. 23(c)(3)(B).

9. One objection was timely filed by a Class Member. Kimberly Cohen filed her objection, dated June 20, 2016, with the Court on June 23, 2016. (ECF Doc. No. 20). As a result of Ms. Cohen's objection, the Parties agreed to and executed an Addendum to the Stipulation ("the Addendum") that provided that any former participants who reside in a zip code more than 75 miles from the Phoebe Employee Health Clinic ("the Clinic") may be reimbursed up to $100 for comparable medical services received at a health care provider of their choice in their locale in lieu of receiving their $100 credit at the Clinic.

(ECF Doc. No. 31-1). The Addendum provides those former participants who reside more than 75 miles from Albany, Georgia with a comparable benefit to those former participants who are able to conveniently seek medical services at the Clinic. The reimbursement credit for former participants who reside in a zip code that is located more than 75 miles from the Clinic is specifically limited to those services that are provided at the Clinic in order to ensure that the Addendum does not provide a greater benefit than what is provided to those former participants who reside within the greater-Albany area. The Court finds that this Addendum adequately and fairly resolves the concern raised by Ms. Cohen in her Objection.

10. Class Member, Francis S. Taylor, a former employee of PPMH, appeared at the Court's final fairness hearing with the stated intention of objecting. Despite having not filed a timely objection or a notice of intention to appear, the Court permitted Ms. Taylor to be heard in open court and determined that her concerns were not germane to this Action or Settlement.

11. No parties have intervened and the Court is not aware of any objections to or requests for exclusion from the Amended Stipulation, other than the objections raised by Ms. Cohen and Ms. Taylor as described in the preceding paragraphs.

12. The Court finds that Plaintiff Brandi Edwards ("Ms. Edwards" or "Plaintiff") has asserted claims for alleged violations of ERISA against Defendants on behalf of current and former participants and beneficiaries of the Plan. The Court further finds that the Settlement has been negotiated vigorously and at arm's length by the Parties, and further finds that, at all times, Plaintiff has acted independently and that her interests are identical to the interests of the Plan and the Settlement Class. The Court finds that the Settlement

is a fair, reasonable, and adequate settlement and compromise.

13. For the reasons set out in the Court's preliminary order (ECF Doc. No. 19, at 2), the Court find that the Class satisfies the numerosity, commonality, typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a). The Court also finds that issues of law and fact common to the members of the Class predominate, and, in these circumstances, a class action is a superior method for resolving the disputed claims, satisfying Rule 23(b). The Court hereby finally approves the maintenance of the Action as a non-opt-out class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1) with the Settlement Class being defined as:

> All individuals who are or were participants in the Plan, and their beneficiaries, during the period May 1, 2009 to December 31, 2015.

14. For the reasons set out in the Court's preliminary order (ECF Doc. No. 19, at 3), the Court finds that Norris A. Adams, II, Edward G. Connette, Del Percilla, Jr., and Robert M. Beauchamp are adequate class counsel under Rule 23(g) of the Federal Rules of Civil Procedure.

15. The Court finds that the negotiation and consummation of the Settlement by Plaintiff on behalf of the Plan and the Settlement Class does not constitute "prohibited transactions" as defined by ERISA §§ 406(a) or (b). Further, the Court finds that in light of the analysis and opinion provided by the Independent Fiduciary, to the extent any of the transactions required by the Settlement constitute a transaction prohibited by ERISA § 406(a), such transactions satisfy the provisions of Prohibited Transaction Exemption 2003-39. 68 Fed. Reg. 75632 (2003).

16. The Court finds that Defendants have fully complied with the notice requirements of the Class Action Fairness Act of 2005, to the extent possible.

17. Based on the submissions of the Parties and the representations presented at the fairness hearing, the Court hereby ORDERS as follows:

## III.    FINAL APPROVAL OF THE SETTLEMENT

The claims of a certified class may be settled only with the court's approval. Fed. R. Civ. P. 23(e). In considering whether a settlement of a class action should be approved, the Court must determine whether the proposed settlement is fair, reasonable, adequate and free of collusion. Fed. R. Civ. P. 23(e)(2); *Day* v. *Persels* & *Assoc., LLC,* 729 F.3d 1309, 1326 (11th Cir. 2013); *Columbus Drywall* & *Insulation, Inc.,* 258 F.R.D. 545, 559 (N.D. Ga. 2007).

The Eleventh Circuit has identified six factors that a court should consider when determining whether a class action settlement is fair, adequate, and reasonable. *Day,* 729 F.3d at 1326; *In re Smith,* 926 F.2d 1027, 1029 (11th Cir. 1991). The factors are: (l) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the state of the proceedings at which the settlement was achieved. *Id.* In addition, this Court has suggested consideration of additional factors, including: (7) the terms of the settlement; (8) the procedures afforded to notify class members of the proposed settlement and to allow them to present their views; and (9) the judgment of experienced counsel. *Meyer* v. *Citizens & S. Nat 'I Bank,* 677 F. Supp. 1196, 1201 (M.D. Ga. 1998).

There is a strong judicial policy favoring settlement. *Meyer,* 677 F. Supp. at 1200. After considering all of these factors, as set forth below, the Court concludes that the settlement is fair, adequate, and reasonable, was reached without collusion, and should be approved.

### A. Fairness, Adequacy and Reasonableness

#### 1. The likelihood of success at trial.

The bases for Plaintiff's claims are described in detail in Section I.A. above. Defendants' position is that the factual contentions and assumptions underlying Plaintiff's claims are mistaken in that while there are some plans with discount rates that are more favorable to the Plan's, all but one of those plans are much smaller, self-insured plans that could not otherwise afford coverage, and, as such, PPHS was acting as a "good corporate citizen" in giving those plans a greater discount. Defendants' also argue that the discounts for other traditional managed care organizations were either less favorable than or comparable to the discount afforded to the Plan here. Defendants also rely upon the "prompt pay discount" in the contract with Health Partners as a feature that resulted in greater cost savings to the Plan. Finally, Defendants argue that Plan participants are charged dramatically lower premium costs, as opposed to the premiums charged for traditional insurance products.

Defendants also raised Plaintiff's failure to exhaust administrative remedies in their motion to dismiss (ECF Doc. No. 5). This dispute was outlined in Plaintiff's brief supporting Motion for Preliminary Approval of Class Action Settlement (ECF Doc. No. 15, pp. 12-15).

Another issue presented to both sides was whether the selection of Health Partners as the provider network for the Plan was a settlor function or a fiduciary function. Plaintiff argued that the network selection was a fiduciary function, relying upon a Department of Labor ("DOL") information letter, several published articles, the only published case on the issue – *Mahoney v. J.J. Weiser & Co., Inc.*, 564 F. Supp. 2d 248, 255-56 (S.D.N.Y. 2008) – which the independent fiduciary found generally supports their position (ECF Doc. No. 30-1, p. 9), and the fact that Emory Hospital sought a prohibited transaction exemption from the DOL under factually similar

circumstances. Defendants, in turn, argued that the selection of Health Partners as the provider network is written into the terms of the Plan itself, and therefore is a matter of plan design, thereby making it a settlor function.

Plaintiffs also alleged that PPHS, by selecting Health Partners as the provider network, caused the Plan to enter into a prohibited transaction in violation of ERISA § 406(b)(3), which prohibits a fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan," as well as ERISA § 406(a)(1)(C), which provides that a fiduciary shall not cause a plan to engage in a transaction that constitutes a direct or indirect "furnishing of goods, services, or facilities between the plan and a party in interest." Defendants argue that Plaintiff's ERISA § 406(a)(1)(C) claim is barred by the service provider exemption in ERISA § 408(b)(2), which permits "[c]ontracting or making reasonable arrangements with a party in interest for . . . services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." Defendants also argue that ERISA § 408(b)(2) provides an exemption to the alleged prohibited transaction pled under ERISA § 406(b)(3). The Parties also disagree over whether the exemptions in ERISA § 408 apply to the prohibited transactions set forth in ERISA § 406(b). Plaintiff cites to 29 C.F.R. § 2550.408b2(e)(1), as well as *Patelco Credit Union v. Sahni*, 262 F.3d 897 (9th Cir. 2001), in support of the position that ERISA does not provide exemptions for prohibited transactions under Section 406(b). Defendants, in turn, cite to *Harley v. Minnesota Min. & Mfg. Co.*, 284 F.3d 901 (8th Cir. 2002), in which the court rejected the DOL's interpretation of ERISA § 408 and reached the opposite conclusion. Importantly, the Eleventh Circuit has not yet ruled on this issue.

Plaintiff's remaining cause of action relates to her contentions that Defendants breached

their fiduciary duties under ERISA § 404. Defendants posit three arguments as to why the selection of Health Partners was not a breach of fiduciary duty: (i) the selection of Health Partners was a settlor function, not a fiduciary function; (ii) the Plan's discount was at least comparable to the discount available to similar plans; and (iii) even if the selection of Health Partners was a fiduciary function, it was a prudent choice, as evidenced by the favorable discount rates paid by the Plan, when compared to other similar plans.

Given these disputed issues, it is not without risk that Plaintiff (or the Class) would be successful in proving her claims at trial.

### 2. The range of possible recoveries.

"In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that plaintiffs could recover at trial and combine this with an analysis of plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries." *Columbus Drywall*, 258 F.R.D. at 559. As such, it is necessary to examine the benefit that each member of the Class will receive pursuant to the Stipulation of Settlement. Pursuant to the terms of the Settlement, each member of the Class will receive either a credit or a reimbursement for their health services. According to the calculations performed by the independent fiduciary, the medical credits and reimbursements to the current and former participants total between $1,177,000 and $1,194,100. (ECF Doc. No. 30-1, p. 3-4, 14). Additionally, the Class as a whole will also receive a Plan cost freeze, the removal of the Plan's subrogation terms, and future oversight by an independent fiduciary. These benefits to the Class will also provide additional monetary value to the participants and their beneficiaries. *Id*. at 14-15. Given the uncertainties discussed in the preceding section, the proposed settlement is within the range of possible recovery. *Id*.

### 3. The point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable.

To determine whether a proposed settlement falls within the range of reasonableness, a Court must consider the value to the Class. *Id*. In order to do so, it is necessary to consider the terms of the proposed Stipulation of Settlement. In this case, the Settlement will result in: (i) current Plan participants receiving a $300 credit each to be used at the Clinic; (ii) former Plan participants receiving a $100 credit each to be used at the Clinic if they reside within 75 miles of the Clinic or a reimbursement of $100 each for services received at a health care provider of their choice if they reside outside of 75 miles of the Clinic; (iii) a cost freeze for the 2016 fiscal year, including but not limited to premiums, co-insurance, copays, and individual or family out-of-pocket maximums; (iv) the removal of all subrogation terms from the Plan; and (v) future oversight by an independent fiduciary of the discount received by the Plan for services provided at PPMH as compared to other self-funded plans and insurance networks, as well as selection of the Third Party Administrator ("TPA") for the Plan. Moreover, both the Class Representative compensation and Class Counsel's attorneys' fees will be paid separate and apart from the amounts paid to the Class. The Parties submit that the range of recovery afforded by the Stipulation of Settlement compares favorably to other settlements that have received court approval. Based on the foregoing, the amount of the payments called for by the Stipulation of Settlement is fair, adequate, and reasonable.

### 4. The complexity, expense, and duration of litigation.

Because they believe that they have legal defenses to Plaintiff's claims, Defendants filed a motion to dismiss Plaintiff's Complaint, which if granted, would have caused Plaintiff to exhaust administrative procedures under the Plan. The Parties met in Atlanta to discuss the case, agreed to stay the case to engage in informal discovery, exchanged and reviewed documents, and

exchanged mediation briefs laying out their respective factual and legal positions. By that point, the Parties were familiar with the facts and legal issues necessary to evaluate the claims, defenses, and potential recoveries. Because the facts and issues were apparent, the Parties attended mediation on November 11, 2015, and the negotiations that took place at the mediation resulted in the Settlement. By entering into this negotiated resolution of the case, the Parties avoid the time and considerable expense of further, protracted litigation, including discovery and preparation for trial, a potential interlocutory appeal, trial, and final appeal, all with no certainty as to the outcome. As stated in the report of the independent fiduciary, "[c]ases of this nature, particularly complex ERISA cases, are expensive to litigate, and both sides are likely to have expended hundreds of thousands of dollars, or more, in attorneys' fees and costs if the litigation were to proceed to discovery, motions, final judgment and appeals." (ECF Doc. No. 30-1, p. 13). The Stipulation of Settlement avoids the potential costs of continued litigation for the Class and the Defendants.

### 5. Substance and degree of opposition to the settlement.

Out of 5,968 Settlement Class members, only one objection to the terms of the Stipulation was timely and properly filed, which the Parties accounted for by amending the Stipulation to directly address the concerns of the sole objector, as detailed above. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat 'I Rural Telecom. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases). Therefore, this factor weighs in favor of approving the Settlement reached in this case.

### 6. The stage of proceedings at which the settlement was achieved.

"The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). Here, although no formal discovery took place, the Parties engaged in considerable dialogue and arms-length negotiations involving extensive argument and counterargument. Plaintiff had access to and reviewed numerous documents related to Defendants and the issues involved in this litigation, which allowed Plaintiff to evaluate the merits of her case. The Parties agree on the basic facts and they are set forth in the Stipulation of Settlement. In addition, the Parties are familiar with the relevant legal issues as those issues were raised in the Defendants' motion to dismiss, the Parties extensive communications, and in the Parties' mediation briefs. Settlement was achieved in good faith following a formal mediation with an experienced mediator. As such, the Court finds that the absence of formal discovery was not a negative in this case,[1] but rather the Parties expended considerable time and resources in evaluating the merits of their respective positions.

### 7. Terms of the settlement.

The Court has reviewed the Stipulation of Settlement, as amended, and described its pertinent terms above. Under the Stipulation of Settlement, Defendants will provide certain credits to members of the Settlement Class, to be used at the Clinic. Class Members who are current participants will receive a $300 credit to be used at the Clinic within two years of the date of issuance of the credit. Class Members who are former participants and live within 75 miles of the Clinic will receive a $100 credit to be used at the Clinic within two years of the date of issuance of the credit. Class Members who are former participants and live outside of 75 miles of

---

[1] The independent fiduciary reached the same conclusion. (ECF Doc. No. 30-1, p. 15).

the Clinic may be reimbursed up to $100 for comparable medical services received at a health care provider of their choice in their locale in lieu of receiving their $100 credit at the Clinic. In addition, Defendants will: (1) remove the subrogation terms from the Plan; (2) not increase any of the costs of the Plan to participants during the 2016 fiscal year; (3) pay Class Counsel's attorneys' fees and expenses; (4) pay a class representative contribution fee; and (5) appoint an independent fiduciary to confirm that the future discount received by the Plan for services provided by PPMH is as good as or better than the discount offered to any other self-funded plan and/or insurance network, as well as to select a TPA for the Plan. The Court finds that these settlement terms, which have been reviewed and approved by an independent fiduciary, are fair and reasonable.

### 8. Procedures to notify class members of the proposed settlement.

Rule 23(e) of the Federal Rules of Civil Procedure specifies that, "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). Further, pursuant to Fed. R. Civ. P. 23(h)(1), Class counsel must also notify class members in a reasonable manner of any motion for attorneys' fees and costs.

The Court determines that the Class Notice transmitted to the Settlement Class on or about June 9, 2016, pursuant to the Preliminary Approval Order concerning the Settlement and the other matters set forth therein, was the best notice practicable under the circumstances and included individual notice to all Members of the Settlement Class who could be identified through reasonable efforts. The Class Notice was received by approximately 96.3% of the Class Members,

a percentage that is well above the widely accepted standard of 75%. Such Class Notice provided valid, due and sufficient notice of these proceedings and of the matters set forth therein, including the Settlement described in the Stipulation to all persons entitled to such Class Notice, and such Class Notice has fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.

For the reasons set forth above and in the Court's preliminary approval order (ECF Doc. No. 19, at 5-6), the procedures approved for providing notice to the Class complied with Rule 23 and the requirements of due process, as the procedures were reasonably calculated to apprise Class Members of the pendency of the action, inform them of their rights under the Stipulation of Settlement, and afford them an opportunity to present their views. The Court finds that Counsel for the Parties complied with the Court's directives concerning notice and that no practicable alternative to those procedures exists given the distribution of Class Members throughout the country.

In addition, the Parties have presented to the Court three proposed Supplemental Class Notices (the "Supplemental Class Notices") which are appended to Plaintiff's Motion for Final Approval (ECF Doc. No. 23) as Exhibits F-H (ECF Doc. Nos. 23-3, 23-4, 23-5). The Court approves the form and content of the Supplemental Class Notices finding that they fairly and adequately provide notice to the Members of the Settlement Class regarding how to claim their credits/reimbursements once final approval has been granted. For Members of the Settlement Class who are former participants, Defendants shall transmit the appropriate Supplemental Class Notice via U.S. mail. For Members of the Settlement Class who are current participants (i.e., current employees), Defendants shall transmit the appropriate Supplemental Class Notice via e-mail to their corporate e-mail addresses and via posting to the company's intranet regarding

benefits/human resources matters. The Court finds that such proposed manner of providing notice regarding how to claim their credits/reimbursements to the Members of the Settlement Class is adequate.

For these reasons, the Court reaffirms its prior finding that the notice procedure established by the Court constitutes the best notice practicable under the circumstances. Having found that the Parties complied with the Court's directives in that regard, the Court finds that the Class Members were given sufficient notice of the terms of the Stipulation of Settlement and their rights to submit claims, request exclusion, or object to the terms of the Stipulation of Settlement, as well as how to receive their credits or reimbursements upon final approval.

**9. Judgment of experienced counsel.**

In considering whether to approve the settlement, this Court is entitled to rely upon the judgment of experienced counsel for the Parties. *Meyer*, 677 F. Supp. at 1210. "Indeed the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id*. (internal quotations and citation omitted). Here, counsel for the Parties are competent and experienced, and have recommended that the Court approve the settlement.

**B. Absence of Collusion**

There is no evidence in the record before the Court, nor has there been any suggestion by anyone, that there has been any fraud or collusion among the Parties or their attorneys in arriving at the terms of this Settlement. On the contrary, the attorneys for the respective Parties have vigorously advanced the interests of their respective clients. The Defendants filed a motion to dismiss this case. A settlement was reached only after a lengthy arms-length negotiation before a mediator. The Court further finds that the Settlement is not part of an agreement, arrangement, or understanding designed to benefit a party-in-interest, but rather is designed and intended to

benefit the Plan, Plan participants, and Plan beneficiaries. Therefore, the Court finds that the settlement was negotiated without any fraud or collusion. *Meyer,* 677 F. Supp. at 1201.

After considering the factors listed above, the Court hereby GRANTS final approval of the settlement outlined in the Amended Stipulation.

## IV.     FINAL ORDER ON SETTLEMENT

For the reasons set forth herein, the Court hereby GRANTS final approval to the Amended Stipulation and ORDERS as follows:

1.  Within 30 days of Complete Settlement Approval (as that term is defined in Paragraph 6 of the Stipulation), Defendants shall cause the Supplemental Class Notices, with such non-substantive modifications thereto as may be agreed upon by the Parties, to be disseminated in the manner approved above;

2.  After Complete Settlement Approval, Defendants shall effectuate the relief set forth in Paragraphs 11-16 of the Stipulation, consistent with the specific deadlines established in the Stipulation.

3.  Within 30 days of Complete Settlement Approval (as that term is defined in Paragraph 6 of the Stipulation), Defendants shall remit attorneys' fees in the amount of $350,000.00 to attorneys for the Class;

4.  Within 30 days of Complete Settlement Approval (as that term is defined in Paragraph 6 of the Stipulation), Defendants shall remit the case contribution award in the amount of $5,000.00 to Plaintiff Brandi Edwards;

5.  All members of the Settlement Class and the Plan are hereby barred and enjoined from the institution and prosecution, either directly or indirectly, of any other actions in any court asserting any and all Released Claims against any and all Defendants; and

6. This case is hereby dismissed with prejudice. The Court retains jurisdiction to enforce the terms of the Settlement.

   **SO ORDERED**, this __31st__ day of August, 2016.

                                        _____/s/ Leslie J. Abrams_____
                                        **LESLIE J. ABRAMS, JUDGE**
                                        **UNITED STATES DISTRICT COURT**

CONSENTED TO BY:

Norris A. Adams, II
Edward G. Connette
ESSEX RICHARDS, P.A.
1701 South Boulevard
Charlotte, NC 28203
Phone: (704) 377-4300
Fax: (704) 372-1357
nadams@essexrichards.com
econnette@essexrichards.com

Del Percilla, Jr.
1801 Gillionville Rd.
Albany, GA 31707-3736
Phone: (229) 432-5883
Fax: (229) 436-6302
delp@percillalaw.com

Robert M. Beauchamp
1713 Dawson Road

Albany, GA 31707
Phone: (229) 435-3000
Fax: (229) 317-1890
bobbeauchamplaw@gmail.com

H. Douglas Hinson
Emily S. Costin
ALSTON & BIRD LLP
950 F Street, NW
Washington, DC 20004-1404
Phone: (202) 239-3300
Fax: (202) 239-3333
doug.hinson@alston.com
emily.costin@alston.com

Patrick C. DiCarlo
Elizabeth Wilson Vaughan
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Phone: (404) 881-7000
Fax: (404) 253-8401
pat.dicarlo@alston.com
beth.vaughan@alston.com